# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NATIONAL RESPONSE CORPORATION, a Delaware corporation,<br><br>   Plaintiff,<br><br>v.<br><br>PAUL W. KEMP, SOUNDEARTH CONSTRUCTION, a Washington Corporation and SOUND ENVIRONMENTAL STRATEGIES, a Washington corporation,<br><br>   Defendants. | No.<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF** |

Plaintiff, National Response Corporation ("NRC"), by and through its undersigned attorneys, hereby brings the following Complaint for injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure against Defendant Paul Kemp (hereinafter referred to as "Kemp") for: (i) breach of contract; (ii) tortious interference with prospective economic relations; and (iii) unfair competition, and against Defendants SoundEarth Construction and Sound Environmental Strategies (together "SoundEarth") for (i) tortious interference with contract and (ii) tortious interference with prospective economic relations, and in support thereof avers as follows:

PAGE 1 – COMPLAINT FOR INJUNCTIVE RELIEF

# I. PARTIES

1. Plaintiff NRC is a Delaware corporation maintaining its principal place of business at 3500 Sunrise Highway, Suite 103, Great River, NY 11739, and transacting business in this judicial district in, Washington. NRC is a citizen and resident of the states of Delaware and New York.

2. Defendant Kemp is the former Vice President – Pacific Northwest Region for Plaintiff. Kemp is a citizen and resident of the State of Washington.

3. Upon information and belief, Defendants SoundEarth Construction and Sound Environmental Strategies are Washington corporations maintaining their principal place of business in Seattle, Washington.

# II. JURISDICTION AND VENUE

4. Jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs. Immediate injunctive relief is sought pursuant to Rule 65 of the Federal Rules of Civil Procedure. Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because it is the district in which the conduct complained of arose and in which the Defendant resides.

# III. THE FACTS

5. NRC is engaged in the business of, *inter alia*, providing hazardous and non-hazardous waste management and emergency response services to the private and public sectors.

6. Kemp commenced employment with NRC in or about November 2007.

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 1250
Portland, Oregon 97204
(503) 242-4262

7. Concurrent with the commencement of his employment with NRC, Kemp sold substantially all of the shares of two companies of which he was the majority owner, Rivers Edge Services, Inc. and Kemp's River Edge Vactor Services, to NRC.

8. Prior to NRC's acquisition of Kemp's companies, his companies competed with NRC for environmental emergency response and environmental remediation services.

9. In conjunction with NRC's purchase of Kemp's businesses, which was memorialized in an Acquisition Agreement, Kemp and NRC also agreed to and executed an Employment Agreement. (A copy of the Employment Agreement is attached hereto as Exhibit "A").

10. The Employment Agreement was for a variable term, which term would be subject to Kemp's entitlement to certain bonuses. For all relevant purposes herein, the relevant term is the Initial Term, which the Employment Agreement defines as follows:

> **2. Term.** Unless sooner terminated as provided in Section 5 hereof, the term of Employee's employment and this Agreement shall be from the date hereof [15 November 2007] to the earlier of: (i) December 31, 2011 or (ii) the date on which the Maximum Bonus Amount is attained....

See Exhibit "A" hereto.

11. During all time periods relevant to this action, Kemp was in the Initial Term of his employment with NRC, which was only set to end on December 31, 2011, based on Kemp's progress toward certain bonus targets.

12. The Employment Agreement executed by Kemp provides, *inter alia*, that he may not disclose or use NRC's Confidential Information during or after his employment with NRC (except in the performance of his duties as an employee):

PAGE 3 – COMPLAINT FOR INJUNCTIVE RELIEF

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 1250
Portland, Oregon 97204
(503) 242-4262

> 7. **Confidential Information.** At all times during and for two (2) years after the Term of this Agreement, *[Kemp] will hold in strict confidence* and, without the express prior written authorization of the Company's Board of Directors, [Kemp] shall not disclose to any person or entity, *any financial or marketing data of the Company* (including, without limitation, financial statements of the Company or any Affiliate), *or any other material and non-public information, business or marketing plans or trade secrets of, or used in the business of, the Company, or any other proprietary or confidential information related to the Company or the services or business affairs of the Company* or any of its Affiliates....
>
> * * *
>
> Upon termination of such employment, [Kemp] shall deliver to the Company (i) all documents, records, notebooks, work papers and all similar repositories containing any Confidential Information or any other information concerning the Company or any Affiliate, whether prepared by [Kemp], the Company or anyone else, including, without limitation, all copies, whether stenographic, electronic or otherwise, of same, and (ii) all tangible personal property belonging to Company that is [Kemp's] possession. The foregoing restrictions shall not apply to (i) information which is or becomes, other than as a result of a breach of this Agreement, generally available to the public, (ii) disclosure of the terms of [Kemp's] compensation or benefits as an employee of the Company, or (iii) the disclosure of information required pursuant to a subpoena or other legal process....

*See* Exhibit "A" hereto (emphasis added).

13. The Employment Agreement also provides that Kemp may not compete with NRC during the Initial Term of his employment and for two years after the expiration of the Initial Term:

> 8. **Non-Competition.** Except as otherwise provided in Section 5.6 of this Agreement, [Kemp] agrees that, regardless of when the Employment Termination Date occurs but subject to the exception set forth below, during the Initial Term and for a period of two (2) years thereafter (the "Non-Competition Period"), [Kemp] will not engage or participate, in any capacity

PAGE 4 – COMPLAINT FOR INJUNCTIVE RELIEF

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 1250
Portland, Oregon 97204
(503) 242-4262

> (whether as an owner, shareholder, partner, lender, director, officer, employee or independent contractor or consultant or advisor) in, or provide any services (financial, advisor or other) to, any Person or business (including any sole proprietorship, partnership, limited liability company, corporation, unincorporated association or other entity) that directly or indirectly competes with the Company where the Company then provides its services. For purposes of this Section 8, the term "directly or indirectly competes" shall mean that work or services which involve emergency response or environmental remediation services which are substantially similar to the type and kind of such services presently provided by the Combined Businesses as they existed immediately prior to the closing of the Acquisition Agreement. Nothing herein shall be interpreted to prohibit [Kemp] from engaging in those work or services which do not fall within the aforementioned definition of directly or indirectly competing with the Company.

*See* Exhibit "A" hereto.

14. The Employment Agreement further provides that, in the event of a breach of either of these provisions, Kemp consents to the entry of injunctive relief against him:

> **11.2 Remedies.** The Employee acknowledges and agrees that the Employer's covenants and the restrictions on the Employee contained in the foregoing Sections 6, 7, and 8 of this Agreement are reasonable and necessary in order to protect the legitimate interests of the Company, and that any violation thereof by [Kemp] would result in irreparable injuries to the Company. Therefore, *[Kemp] acknowledges and agrees that, in the event of a violation by the Employee of any of those covenants or any of those restrictions the Company shall be entitled to obtain, from any court of competent jurisdiction, temporary, preliminary and permanent injunctive relief to prevent a threatened breach or to obtain a restraint or cessation to an actual breach by [Kemp] of any of [Kemp's] covenants contained in any of Sections 6, 7, and 8 of this Agreement,* in addition to any other rights or remedies to which the Company may be entitled at law or in equity by reason of any such breach or threatened breach of this Agreement.

*See* Exhibit "A" hereto.

15. In exchange for Kemp's promises not to compete and the other covenants set forth in the Employment Agreement, NRC provided Kemp with the following consideration:

 (a) the amount of $3,429,000, minus the amount of assumed debt due at the time of closing, and a payment of working capital in exchange for substantially all the assets of his existing businesses;

 (b) a salary and other compensation, including bonuses, during his employment; and

 (c) appropriate facilities, support, benefits, and other good and valuable consideration.

16. NRC provided the above consideration to Kemp and has satisfied all conditions precedent.

17. Kemp's employment with NRC was terminated on July 2, 2010.

18. Kemp was terminated by NRC "for cause" as that term is defined in Section 5.2 of the Employment Agreement.

19. Kemp has disputed NRC's contention that he was terminated for cause, and has filed a claim against NRC with the American Arbitration Association seeking payment of certain compensation he may have been entitled to upon separation from NRC had his termination been "without case" pursuant to Section 5.1 of the Employment Agreement (which it was not).

20. The Employment Agreement provides that the non-competition provisions contained in Section 8 are not operative on Kemp in either of the two scenarios: (1) NRC

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 1250
Portland, Oregon 97204
(503) 242-4262

terminates his employment without cause; or (2) a judicial or arbitral determination that Kemp terminated the agreement by virtue of NRC's breach.

21. Neither of these circumstances exists, therefore, Kemp remains bound by the non-competition covenants set forth in the Employment Agreement.

22. Kemp's counsel had represented to Plaintiff that he was not employed in competition with Plaintiff.

23. However, in blatant disregard of his non-competition obligations, Kemp has become employed by SoundEarth. *See* Exhibit "B" Kemp's Sound Environmental Strategies and SoundEarth Construction business cards. SoundEarth companies directly compete with NRC for both emergency response and environmental remediation services.

24. Upon information and belief, since he has become employed with SoundEarth, Kemp has provided environmental services to at least one, and likely more, NRC clients.

25. Further, since his separation from NRC, Kemp has also hired two NRC employees, Elsa Dowdy and Clayton Mullendore to work with him at SoundEarth. Upon information and belief, Kemp has used NRC's Confidential Information and other knowledge of the terms and conditions of Dowdy and Mullendore's employment with NRC to tailor offers of employment that would entice them to leave NRC.

26. It would be impossible for Kemp to have recruited two of NRC's employees, and pirated away two of NRC's clients, without having retained NRC's confidential information and trade secrets.

27. NRC avers that Kemp prepared to engage in, is engaging in, and plans to continue engaging in, the following acts:

PAGE 7 – COMPLAINT FOR INJUNCTIVE RELIEF

(a) retention and/or use of NRC Confidential Information and conversion of the information contained in confidential NRC business records,;

(b) transmitting verbally, in writing or in any other manner to his employer, SoundEarth and/or others, the Confidential Information contained in the records of NRC;

(c) competing with NRC by working for SoundEarth Construction and Sound Environmental Strategies, companies that directly or indirectly compete with NRC; and

(d) other such acts contrary to the terms, conditions, and provisions of his Employment Agreement.

### IV.   CAUSES OF ACTION

### COUNT I

### INJUNCTIVE RELIEF

### (against all Defendants)

28. The averments of Paragraphs 1 through 27 are incorporated by reference herein with the same force and effect as if set forth in full below.

29. By virtue of the foregoing, NRC has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Kemp.

30. Unless Kemp is preliminarily enjoined from the foregoing conduct, NRC will be irreparably harmed by:

(a) Disclosure of its confidential information, which is solely the property of NRC;

(b) Loss of client relationships and prospective clients relationships, and loss of customer goodwill, specifically including the goodwill it acquired by virtue of the acquisition of Kemp's companies;

(c) Loss of personnel and threat to office stability; and

(d) Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

31. NRC has no adequate remedy at law.

WHEREFORE, NRC respectfully requests that a Preliminary Injunction issue, enjoining Kemp, directly or indirectly, whether alone or in concert with others, including any officer, agent, employee and/or representative of Kemp's new employers, Sound Environmental Strategies and SoundEarth Construction, from:

(a) using, disclosing, or transmitting for any purpose, including conducting business on behalf of any entity that competes directly or indirectly with NRC, the Confidential Information of NRC, and other information pertaining to NRC's business or its customers;

(b) engaging or participating, in any capacity (whether as an owner, shareholder, partner, lender, director, officer, employee or independent contractor or consultant or advisor) in, or providing any services (financial, advisor or other) to, any Person or business (including any sole proprietorship, partnership, limited liability company, corporation, unincorporated association or other entity) that directly or indirectly competes with NRC or where NRC provides its services, specifically including SoundEarth Construction and Sound Environmental Services, Inc.

## COUNT II

## BREACH OF CONTRACT

### (against Defendant Kemp)

32. The allegations of Paragraphs 1 through 31 are incorporated herein by reference with the same force and effect as if set forth in full below.

33. By virtue of the foregoing conduct, Kemp has violated, *inter alia*, the terms and conditions of his Employment Agreement.

34. Kemp has violated and is continuing to violate his contractual obligations as set forth within his Employment Agreement.

35. As a consequence of the foregoing, NRC has suffered and will continue to suffer irreparable harm and loss.

## COUNT III

## TORTIOUS INTERFERENCE WITH CONTRACT

### (against Defendants SoundEarth Construction and Sound Environmental Strategies)

36. The allegations of Paragraphs 1 through 36 are incorporated herein by reference with the same force and effect as if set forth in full below.

37. NRC has legal, reasonable and enforceable contractual rights as set forth in the Employment Agreement it and Kemp executed.

38. Upon information and belief, SoundEarth knew or should have known of the existence of this contract and/or the essential terms thereof, and tortiously induced, aided and encouraged Kemp to breach his contractual obligations by becoming employed by SoundEarth and otherwise unfairly competing with NRC as set forth herein.

39. SoundEarth's conduct was and is without privilege or justification.

40. Upon information and belief, SoundEarth further induced, aided and/or abetted Kemp to improperly divert NRC's business opportunities for the benefit of SoundEarth and Kemp.

41. As a consequence of the foregoing, NRC has suffered and will continue to suffer irreparable harm.

## COUNT IV

## TORTIOUS INTERFERENCE WITH NRC'S PROSPECTIVE BUSINESS RELATIONS

### (Against All Defendants)

42. The allegations of Paragraphs 1 through 41 are incorporated herein by reference with the same force and effect as if set forth in full below.

43. When Kemp entered the employ of SoundEarth, NRC had existing and prospective business relations with its clients and prospective clients.

44. The foregoing conduct by SoundEarth and Kemp was intended to cause the breach and/or termination of NRC's actual and/or prospective business relations with its clients and/or other prospective business partners, and there is a reasonable certainty that absent Kemp and SoundEarth's intentional misconduct, NRC would have continued in its relationship with its clients and/or other prospective business partners.

45. SoundEarth and Kemp's conduct was and is without privilege or justification.

46. Upon information and belief, SoundEarth and Kemp had an improper motive and/or used improper means to interfere with NRC's business relations, including but not limited to aiding and abetting Kemp's breach of contract, inducing Kemp to violate his

PAGE 11 – COMPLAINT FOR INJUNCTIVE RELIEF

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 1250
Portland, Oregon 97204
(503) 242-4262

contractual obligations, misappropriating NRC's proprietary and confidential information, and other misconduct described herein.

47. As a consequence of the foregoing, PVI has suffered and will continue to suffer irreparable harm.

## COUNT V

## UNFAIR COMPETITION

### (against all Defendants)

48. The allegations of Paragraphs 1 through 47 are incorporated herein by reference with the same force and effect as if set forth in full below.

49. The foregoing conduct of Defendants constitutes an unfair method of competition.

50. As a consequence of the foregoing, NRC has suffered and will continue to suffer irreparable harm and loss.

## COUNT VI

## MISAPPROPRIATION OF TRADE SECRETS

### (against Defendant Kemp)

51. The allegations of Paragraphs 1 through 50 are incorporated herein by reference with the same force and effect as if set forth in full below.

52. NRC's confidential and proprietary records, documents and other information are trade secrets subject to protection under Washington's Uniform Trade Secrets Act, RCW §§ 19.108.010, et seq. (2010).

53. This information derives independent economic value by not being accessible, through readily accessible means, to competitors like Kemp and SoundEarth, which can profit from its use or disclosure.

54. This information is not readily available to the public or to NRC's competitors.

55. NRC has made significant expenditures to develop and maintain this information, which is of great value to any competitor.

56. NRC has taken more than adequate measures under the circumstances to maintain the secrecy of this information: assigning computer access passwords to be used to access NRC computer systems, remote access systems, and other documents and records, restricting access to its business premises, and having employees sign employment agreements with confidentiality provisions.

57. Kemp improperly accessed, obtained and disclosed NRC's trade secrets, in breach of his obligations under his contract, his fiduciary duties to NRC, and NRC's policies.

58. Kemp improperly accessed, obtained and disclosed NRC's trade secrets, in violation of the Washington Uniform Trade Secrets Act.

59. The foregoing conduct of Defendants constitutes a misappropriation and misuse of NRC's confidential and proprietary information and trade secrets in violation of the Washington Uniform Trade Secrets Act.

## V. REQUEST FOR RELIEF

Plaintiff National Resource Corporation, Inc. ("NRC") respectfully requests judgment in its favor and against Defendants Paul Kemp, SoundEarth Construction, Inc.,

PAGE 13 – COMPLAINT FOR INJUNCTIVE RELIEF

and Sound Environmental Strategies, Inc. (collectively "Defendants") as set forth in this Complaint, and prays for the following relief in this action:

A. Injunctive relief enforcing the non-competition and non-disclosure provisions in Kemp's Employment Agreement, prohibiting any further misuse of Plaintiff's Confidential Information, and preventing Defendants from profiting from their wrongful conduct;

B. Awarding compensatory damages to NRC in an amount to be determined at trial for SoundEarth's wrongful conduct;

C. Awarding NRC its costs associated with this action, including without limitation its attorneys' fees;

D. Awarding NRC punitive damages for SoundEarth's wrongful conduct in an amount to be determined at trial;

E. Ordering the Defendants to return to NRC, and purge from their possession, custody and control, any and all documents, computer-based files or data, or information in any form, whether originals, copies, compilations or derivations, which were removed from NRC or which were obtained by the Defendants in connection with NRC;

F. Ordering Kemp to comply with his Employment Agreement; and

/ / /

/ / /

/ / /

/ / /

/ / /

PAGE 14 – COMPLAINT FOR INJUNCTIVE RELIEF

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 1250
Portland, Oregon 97204
(503) 242-4262

G. Granting such other and further legal and equitable relief as the Court deems appropriate.

DATED this 30 day of November, 2010.

FISHER & PHILLIPS LLP

_____
Clarence M. Belnavis, WSB#36681
FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 1250
Portland, Oregon 97204
Telephone: (503) 242-4262
Fax: (503) 242-4263
cbelnavis@laborlawyers.com
Attorneys for Plaintiff

PAGE 15 – COMPLAINT FOR INJUNCTIVE RELIEF